## SHEPHERD v. THE STATE.

CRIMINAL LAW.—*Arrest of Judgment.*—*Causes for.*—A motion in arrest of judgment lies only for two causes, viz. : 1. That the grand jury had no legal authority to present the indictment, for want of jurisdiction in the court ; or, 2. That the facts stated do not constitute a public offence.

SAME.—*Misconduct of Counsel.*—*Reference to Former Trial.*—*Evidence.*—A statement, that, on a former trial, the defendant had been convicted, made in the hearing of the jury, by the prosecuting attorney, to opposing counsel, in reply to a remark by the latter calculated to elicit such remark, and remarks of the same character, made by a witness in the course of his examination, in fixing certain dates, are not sufficient causes for reversing the judgment.

SAME.—*Murder.*—*Verdict upon Circumstantial Evidence.*—*Supreme Court.*— Where a murder has been committed, and, after a fair trial, on a sufficient indictment, under a proper presentation of the law by the court, and upon a chain of evidence which, though wholly circumstantial, clearly points to the defendant as the murderer, the jury trying the cause find the defendant guilty as charged in the indictment and affix a lawful penalty, the Supreme Court will not disturb the verdict.

From the Sullivan Circuit Court.

*S. Coulson, G. W. Buff* and *J. F. Hays,* for appellant.

*T. W. Woollen,* Attorney General, *J. E. Lamb,* Prosecuting Attorney, and *T. J. Wolf,* for the State.

BIDDLE, J.—The appellant was indicted for murder, in the following words:

" The grand jurors of Sullivan county, in the State of Indiana, good and lawful men, duly and legally empanelled, charged and sworn to enquire into felonies and certain misdemeanors in and for the body of said county of Sullivan, in the name and by the authority of the State of Indiana, on their oath present, that one Thomas Shepherd, late of said county, on the 10th day of June, A. D. 1875, at said county and State aforesaid, did then and there unlawfully, feloniously, purposely and with premeditated malice, kill and murder one Mason Engle. by then and there feloniously, purposely and with premeditated

malice, shooting at and against, and thereby mortally wounding, the said 'Mason Engle, with a certain deadly weapon commonly called a revolver, then and there loaded with gunpowder and leaden ball, which said revolver he, the said Thomas Shepherd, then and there had and held in his hands, of which said mortal wound he, the said Mason Engle, then and there instantly died, contrary to the statute in such case made and provided, and against the peace and dignity of the State of Indiana."

The appellant moved to quash the indictment. His motion was overruled, and he excepted.

Plea, not guilty; trial by jury; verdict, guilty; punishment, imprisonment during life.

Motion for a new trial; overruled; exceptions.

Motion in arrest of judgment; overruled; exceptions; judgment on the verdict.

An appeal to this court was prayed and granted, and the appellant allowed sixty days to prepare and file his bill of exceptions.

The errors assigned in this court are:

1. Overruling the motion to quash the indictment;

2. Overruling the motion for a new trial; .

3. Overruling the motion in arrest of judgment.

We do not think the court erred in overruling the motion to quash the indictment. It is well drawn and sufficient in every particular. Indeed, the counsel for appellant do not debate the question in their brief.

The next question we will consider is, overruling the motion in arrest of judgment. This motion lies for two causes only:

1. That the grand jury had no legal authority to present the indictment, for want of jurisdiction in the court; and,

2. That the facts stated do not constitute a public of-

fence. 2 R. S. 1876, p. 409, sec. 144; *Mullen* v. *The State*, 50 Ind. 169; *Greenley* v. *The State*, 60 Ind. 141.

Neither of these causes exists in the case before us.

The appellant complains of the conduct of the prosecuting attorney during the trial. It appears that an attachment had been issued against a witness, Mary Thompson, who was not in attendance, concerning whose absence "the counsel for defendant remarked, that the reason the said Mary Thompson was not here as a witness on this trial was because the prosecuting attorney had so abused her on the other trial. Whereupon the prosecuting attorney remarked to the counsel for defendant, in the presence of the jury, that the jury had convicted the defendant and sent him to the penitentiary on that other trial."

The above remark of the counsel for appellant, in alluding to the conduct of the prosecuting attorney and "the other trial," was as unwarrantable as the remark of the prosecuting attorney, which it called out, and has the disadvantage of being the first breach of courtesy. It were better that neither remark had been made, but, taken together, they do not furnish any ground for reversing the judgment.

In several places throughout the evidence, under the examination of witnesses by the counsel of both sides, the witnesses made statements about "the other trial" and the appellant's return "from Jeffersonville," which were a part of the *res gestæ*, fixing dates and statements, to which no objections were made by the counsel for either side, and which were not improper. Evidence from the witnesses had been called out on both sides, referring to "the other trial," and its results, as plainly as did the above remarks of either counsel. There was no error in this evidence on either side. The remark complained of was not made in the course of argument; it was aside from the trial, and both remarks amounted to no more than a pass at words

between the counsel; and we think, that if one breach of courtesy could be justified by another, the prosecuting attorney was not at fault.

The remaining questions arise under the motion for a new trial. We will examine such as are properly presented by the record and debated in the brief of appellant.

The instructions to the jury asked by the appellant, and refused by the court, are properly reserved. None of the instructions given by the court, and excepted to by the appellant, are reserved by a bill of exceptions, but all except numbers one and three, which are not signed by the judge as required by the statute, seem to be well presented. The instructions asked for by the appellant, and refused by the court because they were given in substance on the court's own motion, and those refused and given in a modified form, are so numerous and long, that it is impracticable to set them out, with their substitutes and modifications, in this opinion, but they have been carefully considered in full consultation, and we are of opinion that there is no error in them. They seem to us full and fair, to the very verge of the law in favor of the appellant. The same may be said with regard to the instructions given by the court on its own motion, and excepted to by the appellant. They seem to us to present the law of the case fully, carefully and justly towards the State and towards the defendant. No error was committed, in our opinion, either in giving or refusing to give instructions to the jury.

But a more difficult question presents itself in the case, upon the character of the evidence as being sufficient to support the verdict; indeed, it seems to us that this is the only question which affords open ground for doubt or debate, and the one upon which the counsel for appellant have spent far more force and earnestness than upon any other question before us.

Shepherd *v.* The State.

Mason Engle was killed upon the 10th day of June, 1875. He was shot in the night-time, through an open window pane, by some person standing outside of his house, with a pistol, or some kind of fire-arms, with a leaden ball which passed through his arm, entered his side, pierced the diaphragm, wounded the liver and kidneys, and lodged near the opposite side of his body, of which wound he died. It is clear, therefore, beyond any reasonable doubt, that Mason Engle is dead, that he was killed.

The question then is: Did the appellant commit the crime, as charged in the indictment? The evidence is wholly circumstantial, and is so voluminous and minute in many of its details, as to render it impracticable to set it out at length. But, upon careful reading and full consideration, we believe it proves the following facts, beyond a reasonable doubt: That, for some time before the killing, there had been a feud between the appellant and the deceased, somehow connected with the deceased's wife; that, a short time before the killing, probably about a month, the appellant went to the house of the deceased in his absence, upon an errand, or pretended errand, to his wife. The wife told him that her husband would soon return, and that he had better not remain, as she feared there might be a *fuss.* He expressed no fears, and said he thought there would be no trouble. The husband soon returned home, and immediately accosted the appellant in rough language. Angry words at once sprang up between them, which led to a long and brutal fight, in which the deceased was badly beaten and greatly disabled. The wife, after the fight, went away with the appellant, to her father's house, in the neighborhood. After the fight, the appellant remarked, that he would have her divorced within fifty days. It appears, however, that the wife had returned to her husband, and they had resumed their marital relations, before the killing took place. She was present

in the house with a lighted lamp, and was about retiring to bed, at the time her husband was killed.

The appellant lived about five miles from the residence of the deceased. A man by the name of Whitworth resided with him. Whitworth owned a horse that was kept on the premises of the appellant, which seems to have been used by both Whitworth and appellant as they chose. On the day before the killing, the horse had been shod by a blacksmith in the neighborhood with peculiar, small shoes, such as were not used in that part of the country. The appellant about the same time wore a pair of new boots, with large, well-defined heels.

The next day after the killing of Engle, the trail of a horse was tracked from near the residence of the appellant, across several fields, in the direction of the house of the deceased. The fences had been let down to pass through. From the tracks of the horse, he had evidently been ridden upon the run, and the impression of his feet in the earth corresponded in size and appearance with the shoes put upon Whitworth's horse the day before Engle was killed. Where the fences were let down to cross the fields, boot or shoe tracks were discovered, resembling such as would have been made by the boots which the appellant wore about that time. The horse tracks were traced to within a short distance, probably a half a mile, from the residence of the deceased, where the horse had been tied in a thicket of bushes. Immediately under the window through which the deceased was shot, tracks made by either boots or shoes were found, which resembled the tracks made at the several places where the horse had been taken through the fence gaps in crossing the fields. The horse tracks were traced back from where the horse was hitched, to within a short distance of the appellant's house.

The appellant was at his home the day before and the morning after the killing, but where he was during the

Shepherd *v.* The State.

night of the killing does not appear, either in the evidence for the State or for the appellant, unless it was he who rode the horse that night.

On the next day after, and on several times subsequent to, the killing, when the subject was spoken of to, or in the presence of, the appellant, he said, "Somebody has killed Engle on my credit," or similar words.

Soon after the killing, several citizens undertook to arrest the appellant for the crime. He resisted them with a revolver, and a shooting affray occurred, in which some persons were slightly shot.

When the appellant was arrested by the sheriff, he at first denied that his name was Shepherd, but soon afterwards admitted that he was Thomas Shepherd. Some time before that time he had called himself by another name, and pretended to be or was a doctor engaged in manufacturing and selling patent medicines.

After his arrest, fire-arms and other weapons, and a mask made of muslin, were found among his effects.

It does not appear what became of Whitworth.

There are various other facts, of little or no direct weight either way in the evidence, too numerous and minute, and not of sufficient importance, to make their statement necessary to a fair view of the case.

We think that the above facts prove, beyond a reasonable doubt, that some person rode a horse, upon the night that Engle was killed, from near the residence of the appellant, to a point near the residence of the deceased, and that that person was the murderer of Mason Engle. Was that person the appellant? This is the difficult and decisive question in the case. The jury, upon the evidence, under proper instructions as to the law, have declared that he was. We can not, under any judicial rule known to us, disturb the verdict.

The judgment is affirmed, at the costs of the appellant.